UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PAUL GOODMAN,

                            Plaintiff,

      - against -

THE BOARD OF MANAGERS OF
HARBORVIEW CONDOMINIUM, RMR
RESIDENTIAL REALTY, LLC, LEHRMAN,
GUTERMAN & LEHRMAN, LLP, THE
FERRARA MANAGEMENT GROUP, INC. and
FINGER & FINGER, a Professional Corporation,

                           Defendants.
------------------------------------------------------------x

**OPINION & ORDER**

No. 22-CV-1813 (CS)

<u>Appearances</u>:

Paul Goodman
Cyruli Shanks & Zizmor LLP
New York, New York
*Pro Se Plaintiff*

Christopher Albanese
Milber Makris Plousadis & Seiden, LLP
Purchase, New York
*Counsel for Defendants The Board of
Managers of Harborview Condominium,
RMR Residential Realty, LLC, and
The Ferrara Management Group, Inc.*

Jonathan B. Bruno
Rivkin Radler LLP
New York, New York
*Counsel for Defendant Finger & Finger,
a Professional Corporation*

Seibel, J.

Before the Court are Defendants' motions to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure ("FRCP") 12(b)(6).  (ECF Nos. 51, 56.)[1]  For the following reasons, the motions are GRANTED.

## I.    **BACKGROUND**

For the purposes of the motions to dismiss, the Court accepts as true the facts, but not the conclusions, set forth in Plaintiff's Complaint.  (ECF No. 2 ("Compl.").)

### A.    **Facts**

Plaintiff Paul Goodman owns a residential condominium unit at the Harborview Condominium in Mamaroneck, New York.  (*Id.* ¶ 27.)  Plaintiff and Defendant Board of Managers of Harborview Condominium ("BOM") have "been embroiled over several years in a long series of disputes, several of which have resulted in litigation in New York State Supreme Court."  (*Id.* ¶ 28.)

Pursuant to agreements with BOM, Defendants RMR Residential Realty LLC ("RMR") and The Ferrara Management Group, Inc. ("FMG") worked for BOM as property managers and managing agents of the Harborview Condominium.  (*Id.* ¶¶ 13, 22.)  Their duties allegedly included acting as BOM's "billing agent" and "debt collector" as well as maintaining BOM's books and records during the relevant period.  (*Id.* ¶¶ 14, 23.)  Former Defendant LGL and Defendant Finger & Finger, a Professional Corporation ("F&F") identified themselves as debt

---

[1] Plaintiff voluntarily dismissed his claims against Lehrman, Guterman & Lehrman, LLP, (*see* Minute Entry dated Feb. 17, 2023), so the motions pertain only to the remaining Defendants. While the proper name for this law firm is apparently Lehrman, Lehrman & Guterman, LLP, the parties – including Plaintiff in the Complaint – have consistently called it "LGL."  The Court will do the same.

collectors on their websites and acted as such for BOM.  (*Id.* ¶¶ 9-10, 18-19.)  BOM used LGL as its counsel in three lawsuits claiming that Plaintiff owed money to BOM.  (*Id.* ¶ 29.)

The Complaint contains no other specifics about what any Defendant actually did.  I infer that F&F may have initiated a foreclosure lawsuit against Plaintiff at the behest of FMG, (*see id.* ¶¶ 47(q), 67(f), 67(g)), but beyond that it is impossible to tell what actions any Defendant took. "Plaintiff's Complaint is a jumble of minimal facts and multiple conclusions."  *Rivas v. Levine L. Grp.*, No. 15-CV-21351, 2015 WL 5097119, at *3 (S.D. Fla. Aug. 31, 2015).[2]

Among the latter are that RMR, LGL and BOM "operated as a common enterprise while engaging in the alleged deceptive and unlawful acts and practices" that violate the Fair Debt Collection Practices Act ("FDCPA"), (*id.* ¶ 16), and that the same is true for FMG, F&F and BOM, (*id.* ¶ 25).  Although no context is provided from which one could infer what obligations the FDCPA imposed under the circumstances, Plaintiff alleges that RMR, FMG and F&F did not identify themselves to Plaintiff as debt collectors or inform Plaintiff – in writing or otherwise – that they were attempting to collect a debt.  (*Id.* ¶¶ 36-37, 41-42, 45-46.)  He alleges that "one or more of the Defendants, both alone and [in] concert with each other," engaged in a litany of alleged "ongoing, improper, outrageous, and abusive collection activities."  (*Id.* ¶ 47; *see id.* ¶¶ 57-61, 65-67.)  These activities included intentionally sending correspondence and monthly carrying charge invoices to the wrong mailing address and thereafter commencing lawsuits, (*id.* ¶¶ 47(a)-(b)), refusing to provide Plaintiff with a satisfaction of judgment for an earlier common charge lien foreclosure suit, and refusing to terminate a notice of pendency, despite the judgment being satisfied, (*id.* ¶¶ 47(c)-(e)), taking various allegedly improper steps in prior litigation, (*id.*

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

¶¶ 47(h)-(o)), attempting to collect amounts not shown on monthly invoices, (*id.* ¶ 47 (p)), "[f]ailing to validate debt," (*id.* ¶ 47 (q)), and commencement of a new common charge lien foreclosure action against Plaintiff to collect sums not due or already paid, (*id.* ¶ 47(r)).  Plaintiff alleges that Defendants' conduct and activities were intentional and "deliberately geared or designed to oppress, abuse, harass, intimidate, and/or upset [him]."  (*Id.*  ¶ 49.)  As a result of these activities, Plaintiff suffered emotional distress, anguish, and trauma.  (*Id.*  ¶ 48.)

### B.    Procedural History

Plaintiff filed the Complaint on March 3, 2022,[3] contending that Defendants violated sections 1692(d), (e), (f), and (g) of the FDCPA, 15 U.S.C. §§ 1692(d), (e), (f), and (g), (*see id.* ¶¶ 1, 50-70), and seeking disgorgement of any sums that Defendants collected as a result of their "abusive and illegal acts," (*see id.* ¶¶ 71-73), injunctive relief, punitive damages, and attorneys' fees, (*id.* ¶¶ 74-77).

Defendant F&F filed a pre-motion letter in anticipation of a motion to dismiss on January 23, 2023.  (*See* ECF No. 41.)  At a pre-motion conference on February 17, 2023, I granted Plaintiff leave to amend and set a schedule for F&F's motion to dismiss the amended complaint. (*See* Minute Entry dated Feb. 17, 2023.)  Thereafter Defendants BOM, RMR, and FMG filed a separate pre-motion letter in anticipation of a motion to dismiss.  (*See* ECF No. 49.)  I directed that Plaintiff take their arguments into account when amending the Complaint, and that they file their motions on the same schedule as F&F's.  (ECF No. 50.)  Plaintiff never filed an amended complaint, so the briefing on instant motions, (ECF Nos. 51-58, 63-65), addresses the original Complaint.

---

[3] The Complaint as filed on March 3, 2022 was rejected by the Clerk of Court for a filing error, which was rectified on March 16, 2022.  (*See* ECF Nos. 1, 2.)

II.   **LEGAL STANDARD**

Defendants BOM, RMR, and FMG move to dismiss Plaintiff's complaint pursuant to

FRCP 12(b)(6) and RMR also seeks dismissal on statute of limitations grounds under FRCP

12(b)(1).  (*See* ECF No. 51 at 1; ECF No. 55 ("BOM's Mem.") at 1, 4-5.)  Defendant F&F

moves separately to dismiss pursuant to Rule 12(b)(6).  (*See* ECF No. 56; ECF No. 58 ("F&F's

Mem.") at 1, 6.)

A.   **Rule 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a

notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . .

. it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the

court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth," and then determines whether the remaining well-pleaded

factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

> When deciding a motion to dismiss, a court is entitled to consider:
>
> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may be properly taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011).  In addition, "material that is a matter of public record may be considered in a motion to dismiss." *Byrd v. City of N.Y.*, No. 04-CV-1396, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005) (summary order).[4]

### B.   FDCPA

The FDCPA's purpose is, in part, "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e).  "To state a FDCPA claim, a plaintiff must show that:  (1) he has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Barbato v. U.S. Bank Nat'l Ass'n*, No. 14-CV-2233, 2016 WL 158588, at *4 (S.D.N.Y. Jan. 12, 2016); *see Okyere v. Palisades Collection, LLC*, 961 F. Supp.

---

[4] Plaintiff appears *pro se* but because he is a lawyer, he does not receive special solicitude.  *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[A] lawyer representing himself ordinarily receives no such [special] solicitude at all.").

2d 522, 529 (S.D.N.Y. 2013).  "A debt collector may not engage in any conduct the natural

consequence of which is to harass, oppress, or abuse any person in connection with the collection

of a debt." 15 U.S.C. § 1692d.  "[T]he question of whether a debt collector's conduct violates the

FDCPA is determined objectively from the viewpoint of the least sophisticated consumer."

*Beauchamp v. Fin. Recovery Servs., Inc.*, No. 10-CV-4864, 2011 WL 891320, at *2 (S.D.N.Y.

Mar. 14, 2011).  The FDCPA applies only to the activities of persons or entities who are "debt

collectors" as defined in the statute, *see Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d

454, 462 (S.D.N.Y. 2009) – that is, "any person who uses any instrumentality of interstate

commerce or the mails in any business the principal purpose of which is the collection of any

debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another" or "any creditor who, in the process of collecting his own

debts, uses any name other than his own which would indicate that a third person is collecting or

attempting to collect such debts," 15 U.S.C.A. § 1692a(6).

III.   **DISCUSSION**

    A.   **Whether the Claims Against RMR Are Time Barred**

      Under the FDCPA, "[a]n action to enforce any liability created by this subchapter may be

brought in any appropriate United States district court . . .within one year from the date on which

the violation occurs."  15 U.S.C. § 1692k(d); *see Horsburgh v. Bank of Am., N.A.*, No. 21-CV-

7945, 2023 WL 2648394, at *7 (S.D.N.Y. Mar. 27, 2023) ("[N]o action under the FDCPA may

be brought later than one year from the date of the violation.").  This limitations period begins

running on the date the alleged FDCPA violation occurs, not when it is discovered.  *See Rotkiske

v. Klemm*, 140 S. Ct. 355, 360 (2019).  Because this case was filed on March 3, 2022, only

conduct occurring after March 3, 2021 would be timely.

"Where a defendant raises a statute of limitations defense in a pre-answer motion to dismiss, such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." *Rosario v. Loc. 1106 Transp. Works of Am.*, 29 F. Supp. 3d 153, 158 (E.D.N.Y. 2014).  "An action should be dismissed pursuant to Rule 12(b)(6) where documents properly considered on a motion to dismiss reveal that the action is time barred." *Id.*  Courts typically do not consider more than the "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F3d 554, 559 (2d Cir. 2016).  In certain cases, "a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Id.*  Documents are considered integral "where the complaint relies heavily upon its term and effect" and "merely mentioning a document in the complaint will not satisfy this standard." *Id.*; *see Northern Shipping Funds I, LLC v. Icon Cap. Corp.*, 12-CV-3584, 2013 WL 1500333, at *3 (S.D.N.Y. April 12, 2013) ("[T]o be integral to the pleading, the claimant must have (1) actual notice of the extraneous information and (2) relied upon the documents in flaming the pleading.").

RMR argues that Plaintiff's FDCPA claims against it are time barred by the one-year statute of limitations, (BOM's Mem. at 9-10), and that Plaintiff failed to specify any violations by RMR during the limitations period, (ECF No. 64 ("BOM's Reply") at 6-7).  In support RMR cites to an affidavit submitted by its managing member, Robin Steiner, in which he asserts that RMR stopped managing the Harborview Condominium in April 2021 and had no contact with Plaintiff regarding his outstanding charges in March or April of that year.  (*See* ECF No. 53 ("Steiner Aff.") ¶¶ 7-8.)  Plaintiff contends that RMR's argument is inappropriate for a motion to

dismiss as it "go[es] to the evidentiary support for plaintiff's Complaint," (ECF No. 63 ("P's

Opp.") at 7), and in any event, acts asserted in the Complaint that occurred on or after March 3,

2021 would fall within the statute of limitations, (*id.* at 7-8).[5]

The portions of the Steiner Affidavit that relate to the statute of limitations defense do not

fall within any category of materials I may consider on a motion to dismiss.  Based on the

documents that I may properly consider, I cannot determine that RMR took no action regarding

Plaintiff's debt after February 2021 and thus that Plaintiff's claims against RMR are time barred.

To consider the factual averments in the Steiner Affidavit, I would have to convert the motion to

one for summary judgment.  *See, e.g.*, *James v. N.Y.C. Police Dep't*, No. 16-CV-5682, 2019 WL

3451152, at *2 (E.D.N.Y. Mar. 4, 2019).  But I need not consider whether doing so would be

appropriate here, because I am granting Defendants' motions to dismiss for the reasons set forth

below.

---

[5] Plaintiff also argues that RMR's conduct is timely under the continuing violation doctrine.  (P's Opp. at 7-8.)  But courts within the Second Circuit have not applied the continuing violation doctrine to FDCPA claims.  *See Eades v. Kennedy, PC L. Offs.*, No. 12-CV-6680, 2016 WL 11626636, at *2 (W.D.N.Y. June 28, 2016) ("[A]pplication of the doctrine of continuing violations to FDCPA claims has been consistently rejected by courts in the Second Circuit."); *Craig v. Saxon Mortg. Servs. Inc.*, No. 13-CV-4526, 2015 WL 171234, at *9 (E.D.N.Y. Jan. 13, 2015) ("Although a few district courts within the Second Circuit have discussed the possibility of a continuing violation theory under the FDCPA, none have found the doctrine applicable."); *Basile v. I.C. Sys., Inc.*, No. 08-CV-42, 2011 WL 4368510, at *3 (W.D.N.Y. Sept. 19, 2011) ("The Second Circuit has not found the doctrine of continuing violations applicable under the FDCPA."); *see also Weaver v. Boriskin*, No. 16-CV-688, 2020 WL 13558738, at *3 (E.D.N.Y. Mar. 10, 2020) ("No court of appeals has held that debt-collection litigation (or a misleading statement made in connection with that litigation) is a continuing violation of the FDCPA.").  Therefore, despite Plaintiff alleging violations dating back to 2015, (Compl. ¶ 31), any conduct by any Defendant occurring before March 3, 2021 would be time barred.  *See Horsburgh*, 2023 WL 2648394, at *7.

### B.      Whether Plaintiff Has Adequately Pleaded Claims

The Complaint violates FRCP 8's prohibition against "group pleading."  "It is well established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes."  *Canon U.S.A., Inc. v. F & E Trading LLC*, No. 15-CV-6015, 2017 WL 4357339, at *7 (E.D.N.Y. Sept. 29, 2017).

> As the Second Circuit has explained, although Federal Rule of Civil Procedure 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.  A complaint that lumps all the defendants together in each claim and provides no factual basis to distinguish their conduct fails to satisfy this minimum standard.

*Tracey v. City of Geneva*, No. 17-CV-6567, 2018 WL 1509355, at *3 (W.D.N.Y. Mar. 26, 2018) (citing *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)).

The Complaint here presents a laundry list of actions or inactions alleged to violate the FDCPA and states that they were committed by "one or more of the Defendants, both alone and [in] concert with each other," (Compl. ¶ 47; *see id.* ¶ 61 (alleging conduct by LGL and RMR "acting either alone, or in concert with each other"); *id.* ¶ 67 (alleging conduct by F&F and FMG "acting either alone, or in concert with each other, and in concert with [LGL and RMR]")), which violates Rule 8 by "fail[ing] to give each defendant fair notice of the claims against it," *Holmes v. Allstate Corp.*, No. 11-CV-1543, 2012 WL 627238, at *22 (S.D.N.Y. Jan. 27, 2012), *report and recommendation adopted*, 2012 WL 626262 (S.D.N.Y. Feb. 27, 2012).  "Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim."  *Ying Li v. City of N. Y.*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017) (collecting cases).

The Complaint is not salvaged by the few factual allegations, and indeed the problem is magnified by the lack thereof.  As noted, Plaintiff provides no context from which the reader

could infer what any Defendant did that might violate the FDCPA.  In particular, paragraph 47 of the Complaint, which purports to describe the allegedly unlawful actions, does not provide any information about who did what, let alone the specific provisions of the FDCPA that the acts are alleged to have violated.  Moreover, paragraphs 61 and 67 present no cure because they not only lump Defendants together but also are totally conclusory, consisting of the formulaic recitation of the elements of an FDCPA claim, with no corresponding facts – exactly what is condemned by *Twombly* and *Iqbal*.  *See Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."); *Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.").

Rather than specifying what each Defendant did, when it did it, and why it violates the statute, "plaintiff simply asks the Court to infer that [their] communications occurred under circumstances that would constitute a violation of the FDCPA.  In so relying . . . he fails to raise his claims above the speculative level." *Sembler v. Attention Funding Tr.*, No. 07-CV-2493, 2009 WL 3055347, at *2 (E.D.N.Y. Sept. 24, 2009).  A "complaint must either distinguish between the defendants or plead the allegations with sufficient specificity so that each individual defendant is on notice of the particular claims asserted against it and the grounds for such claims." *Canon*, 2017 WL 4357339, at *7.  This Complaint does neither.

That said, and even though Plaintiff is not a non-lawyer *pro se* litigant entitled to special solicitude, the Court has endeavored to tease out allegations that are arguably specific enough for analysis.  But those also fail to state a claim.

First, Plaintiff alleges that RMR, FMG, and F&F did not identify themselves as a debt collectors or state that they were attempting to collect a debt, purportedly violating section 1692e(11) of the FDCPA.  (*See* Compl. ¶¶ 36-37, 41-42, 45-46.)  Section 1692e(11) prohibits

debt collectors from (1) initiating communications with consumers without first disclosing "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose" and (2) "fail[ing] to disclose in subsequent communications that the communication is from a debt collector . . . ."  15 U.S.C. § 1692e(11).  Here, Plaintiff's claim fails because he has not identified any specific communications that would trigger section 1692e(11)'s obligations.  *See Desmarattes v. Consol. Edison, Inc.*, No. 20-CV-4723, 2023 WL 2969384, at *11 (E.D.N.Y. Jan. 13, 2023) (plaintiff failed to state claim where she "largely repeat[ed] the statutory definitions, while failing to offer any specific facts from which to infer that [defendant] engaged in false representations or deception that run afoul of [sections] 1692e(10) or (11).");  *Antoine v. CitiMortgage, Inc.*, No. 15-CV-5309, 2017 WL 1133354, at *4 (E.D.N.Y. Mar. 24, 2017) (rejecting plaintiffs' allegations as conclusory because they did not identify "any . . . communication that would trigger defendants' disclosure requirements under [section 1692e(11)].");  *Rivas*, 2015 WL 5097119, at *3 ("Plaintiff has not referenced or attached any specific communications he received from Defendants to demonstrate that they improperly attempted to collect a debt.").  Furthermore, to the extent Plaintiff may be relying on F&F's foreclosure action against him, (*see* Compl. ¶ 47(r)), section 1692e(11) explicitly exempts lawsuits from its requirements.  *See* 15 U.S.C. § 1692e(11) ("[T]his paragraph shall not apply to a formal pleading made in connection with a legal action.");  *Antoine*, 2017 WL 1133354, at *4 ("To the extent that the summons and complaint in the foreclosure action can be construed as communications from defendants, these documents are explicitly excluded from [section] 1692e(11)'s disclosure requirements.").

Second, Plaintiff's allegations that F&F and FMG (perhaps in concert with LGL and RMR) violated sections 1692e(2) and 1692e(10) by "commencing a foreclosure action" for

"sums not owed" and "sums not invoiced," (Compl. ¶ 67(f)-(g)), are completely conclusory.  As relevant here, the FDCPA prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt," *see* 15 U.S.C. § 1692e(2)(A), as well as "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," *see* 15 U.S.C. § 1692e(10).  Plaintiff's bare, conclusory allegations are not sufficient to support a claim under sections 1692(e)(2) and (10).  *See Rivas*, 2015 WL 5097119, at *3 (dismissing where plaintiff "failed to provide any facts to support his laundry list of conclusions and formulaic recitations of behaviors necessary to find an FDCPA violation").  Plaintiff has not provided any facts rendering plausible the conclusion that the foreclosure action was based on inaccurate information about the amount of his debt.[6]  *See Carter v. Tacony Crossing 2021 LLC*, No. 22-CV-4941, 2023 WL 2920280, at *4 (E.D. Pa. Apr. 12, 2023) ("[Plaintiff] does not allege any facts explaining why the amount [sought in defendant's lawsuit] is false, misleading, or otherwise inaccurate.  This is fatal to any [section] 1692e(2)(a) claim."); *Sandlin v. CitiMortgage, Inc.*, No. 19-CV-2368, 2021 WL 1581771, at *10 (W.D. Tenn. Mar. 1, 2021) (recommending dismissal where plaintiff offered only a "conclusory statement to show that the amounts charged by [defendant] are not authorized by the mortgage or are unlawful"), *report and recommendation adopted*, 2021 WL 1156627 (W.D. Tenn. Mar. 26, 2021); *Blackwell v. United Auto Credit*, No. 20-CV-6591, 2021 WL 534461, at *2 (E.D. Pa. Feb. 12, 2021) (where, among other things, plaintiff did not "explain why th[e] amount [sought] was incorrect," he "failed to describe the events giving rise to his claims in sufficient detail to support

---

[6] Nor has Plaintiff suggested why a lawsuit cannot be brought for an amount greater than that invoiced.  For example, if an agreement provided for interest, penalties or attorneys' or other fees, or if such amounts were collectable under applicable law, there is no apparent reason they could not be sought even if they were not previously invoiced.

a plausible FDCPA violation"); *Garland v. Wells Fargo Home Mortg. Inc.*, 303 F. Supp. 3d 554, 562 (E.D. Mich. 2018) (dismissing where plaintiff presented "only a conclusory statement that [defendant] violated the FDCPA because the amount [defendant] stated was significantly higher than what [plaintiff] expected" and "[plaintiff] did not provide any further details regarding the actual amount owed").

Finally, paragraphs 61 and 67 of the Complaint allege that each Defendant did not send validation notices as required by section 1692g(a).[7]  (*See* Compl. ¶¶ 61(c), 67(c).)  But there is nothing in those paragraphs, or elsewhere in the Complaint, that describes any communication by any Defendant, let alone that specifies in which communications the notices should have been included or what was missing.  Thus, Plaintiff has not pleaded sufficient facts to support a violation.  *See Craig v. Saxon Mortg. Servs., Inc.*, No. 13-CV-4526, 2015 WL 171234, at *8 (E.D.N.Y. Jan. 13, 2015) (dismissing section 1692g(a) claim where plaintiff did not plead any facts about initial communication and stated only conclusory assertions); *Smith v. L. Offs. of*

---

[7] Section 1692g(a) states:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—(1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the third-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

*Patenaude & Felix, A.P.C.*, No. 13-CV-3061, 2014 WL 3695473, at *4 (S.D. Cal. July 23, 2014) (complaint's "allegation that Defendant violated the FDCPA when it failed to provide a 30 day validation notice to the Plaintiff is conclusory and insufficient to state a claim without additional factual allegations"); *Adams v. Homeward Residential, Inc.*, No. 13-CV-329, 2014 WL 460936, at *4 (S.D. Ala. Feb. 5, 2014) ("From a careful reading of the Complaint, we have no idea what [defendant's] initial communication with [plaintiff] was, much less whether that initial communication did or did not comport with the notification provisions of [section] 1692g(a)."); *Hardy v. Wells Fargo Bank N.A.*, No. 12-CV-851, 2013 WL 12014436, at *10 (N.D. Ga. Jan 31, 2013) (dismissing section 1692g(a) claim where plaintiff provided "no factual information about the initial communication, when it was sent, or [its] contents" and failed "to explain whether [defendant] sent any subsequent communication within five days of the initial communication"), *report and recommendation adopted*, 2013 WL 11975139 (N.D. Ga. Feb. 21, 2023).

Finally, to whatever extent Plaintiff may have thought that commencing the foreclosure action constitutes a communication, section 1692g(a)'s validation notice requirement – like section 1692e(11)'s identification requirement – does not apply to lawsuits. *See* 15 U.S.C. § 1692g(d) ("A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a) [of this section.]"); *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 213 (2d Cir. 2017) ("[Congress] adopted a broad exclusion that, on its face, applies to any communication forming any part of a pleading."); *Tchernitsky v. Pigott*, No. 16-CV-418, 2019 WL 1492908, at *2 (E.D.N.Y. Mar. 31, 2019) (issuance "of a petition and accompanying notice in a landlord-tenant proceeding is akin to a formal pleading in a civil action" and does not violate FDCPA).

At bottom, Plaintiff's allegations amount to little more than "formulaic recitation[s] of the elements of a cause of action" and "labels and conclusions" lacking factual support. *Twombly*, 550 U.S. at 555; *see, e.g.*, *Desmarettes*, 2023 WL 2969384, at *11; *Rivas*, 2015 WL 5097119, at *4; *Sanchez v. Abderrahman*, No. 10-CV-3641, 2012 WL 1077842, at *5 (E.D.N.Y. Mar. 30, 2012). Accordingly, he does not meet FRCP 8's pleading requirements, *see Iqbal¸* 556 U.S. at 676, and his claims must be dismissed.[8]

_____

[8] Because Plaintiff fails to state a claim upon which relief can be granted, I need not address RMR's and FMG's argument that they are not debt collectors as defined by the FDCPA and that in any event they fall under the exception for bona fide fiduciaries, 15 U.S.C. § 1692a(6)(F)(i). (BOM's Mem. at 5-7; BOM's Reply at 3-5.) But I note that Plaintiff's allegations that RMR and FMG satisfy the general definition of "debt collector" under the FDCPA are wholly conclusory, merely parroting the statutory language with no factual support. (*See* Compl. ¶¶ 13-15, 22-24, 51, 58, 66); *see, e.g.*, *Gold v. Shapiro, Dicaro & Barak, LLC*, No. 18-CV-6787, 2019 WL 4752093, at *5 (E.D.N.Y. Sept. 30, 2019) (conclusory statement that defendant met statutory definition, without supporting factual allegations, fails to state claim); *Deplae v. Reg'l Acceptance Corp.*, No. 09-CV-227, 2010 WL 2270785, at *3 (E.D. Tenn. June 3, 2010) ("[P]laintiff tracked the language of the statute in an attempt to show that defendant is a 'debt collector.' This is exactly what the Supreme Court warned against in *Iqba[l].*")

Further, it appears to the Court that under their agreements with BOM (which I may consider because the Complaint relies on them, (*see* Compl. ¶¶ 13, 22)), RMR and FMG fall within the bona fide fiduciary exception under 15 U.S.C. § 1692a(6)(F)(i). The FDCPA is not directed at creditors seeking to collect their own debts, *see Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 254 (S.D.N.Y. 2008), and this includes a condominium board and its property managers assessing common charges or attempting to collect overdue ones, *see Makhnevich v. Bougopoulos*, No. 18-CV-285, 2019 WL 2994431, at *4 (E.D.N.Y. July 9, 2019) (board); *Raburn v. Cmty. Mgmt., L.L.C.*, 761 F. App'x 263, 267 (5th Cir. 2019) (*per curiam*) (property management company) (collecting cases). Under New York law, RMR and FMG had fiduciary obligations under their agreements to collect past due common charges. *See Bd. of Mgrs. of Brightwater Towers Condo. v. FirstService Residential New York, Inc.*, 147 N.Y.S.3d 78, 81 (2d Dep't 2021) (finding existence of fiduciary relationship between condominium board and property manager where management agreement authorized property manager to "undertake exclusive management of the property, including . . . collecting common charges."). Thus, RMR's and FMG's collection of Plaintiff's debt appears to be incidental to their fiduciary obligations as BOM's property managers. *See Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 481 (6th Cir. 2020) ("[C]ourts have held that managers of condominium or apartment complexes fall within exceptions to the debt-collector definition when acting as agents for the condo or apartment owners.") (collecting cases); *Raburn*, 761 F. App'x at 266-67 (agreement between property manager and homeowner's association established a "bona fide fiduciary

C.    <u>Leave to Amend</u>

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to

amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally

granted, may properly be denied for:  'undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment,

etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S.

178, 182 (1962)).

Plaintiff has already received leave to amend, (*see* Minute Entry dated Feb. 17, 2023),

after having benefit of the Defendants' pre-motion letters, which discussed the Complaint's lack

---

obligation to collect debt"); *Rivas*, 2015 WL 5097119, at *4 ("[C]ourts have held that property
management companies are also not debt collectors within the meaning of the term in the
FDCPA as they have not only a right, but a fiduciary obligation to collect fees from association
members."); *Reynolds v. Gables Residential Servs., Inc.*, 428 F. Supp. 2d 1260, 1264 (M.D. Fla.
2006) ("It is clear from an examination of the Lease Agreement and the general relationship
between a community manager and property owner that [defendant property manager] had a
fiduciary relationship and obligation to [the property], and/or its owners, to manage the
apartment property and collect monthly rent . . . . The monies due by [plaintiff] were payable to
[defendant property manager] not as a debt collector but as Manager of the property.").

As to BOM, as a creditor it cannot violate the FDCPA for attempting to collect its own
debts, *see Burns*, 655 F. Supp. 2d at 254; *Makhnevich*, 2019 WL 2994431, at *4, nor can it be
vicariously liable for RMR's and FMG's alleged violations where none of them are debt
collectors, *see Wai Hoe Liew v. Cohen & Slamowitz, LLP*, 265 F. Supp. 3d 260, 283 (E.D.N.Y.
2017), *as revised* (June 16, 2017) ("In order to hold a debt collector vicariously liable for the acts
of the agent, the plaintiff must allege plausible facts that (1) the agent and principal are both debt
collectors under the FDCPA . . . ."); *see also Burns*, 655 F. Supp. 2d at 255 ("[A] creditor that is
not itself a debt collector is not vicariously liable for the actions of a debt collector it has engaged
to collect its debts.").

Finally, as to F&F, because Plaintiff fails to state a claim even if the debt is covered by
the statute, I need not address whether the common charges constitute consumer debts under the
FDCPA.

17

of factual specificity, how it made its claims against all five defendants, and the conclusory and

vague nature of its allegations, (*see* ECF No. 41 at 3; ECF No. 49 at 20-3), and he chose not to.

Having already had the "opportunity to remedy these factual deficiencies by amendment," and

having "failed to do so," *UCF I Tr. 1 v. Berkowitz, Trager & Trager, LLC*, No. 17-CV-1325,

2019 WL 1430105, at *8 (D. Conn. Mar. 29, 2019), Plaintiff is not entitled to another bite at the

apple, *see Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 n.4 (2d Cir. 1998) (denial of

amendment appropriate where court "already gave [Plaintiff] the opportunity to file an amended

complaint designed to cure the very defect that remains"); *Tamar v. Mind C.T.I., Ltd.*, 723 F.

Supp. 2d 546, 554 (S.D.N.Y. 2010) ("Leave to amend is appropriately denied where the plaintiff

has already had an opportunity to replead after specific warnings as to a complaint's

deficiencies.").

        Moreover, while Plaintiff requested leave to amend in passing, (*see* P's Opp. at 15), he

has not suggested that he is in possession of facts that would cure the deficiencies identified in

this ruling.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff

need not be given leave to amend if plaintiff fails to specify how amendment would cure the

pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011)

(district court did not err in dismissing claim with prejudice in absence of any indication plaintiff

could or would provide additional allegations leading to different result); *see also Golla v.

Neovasc, Inc.*, No. 22-CV-361, 2023 WL 2469770, at *3 (2d Cir. Mar. 13, 2023) (summary

order) (denial of leave to amend "particularly appropriate where plaintiff's counsel did not

advise the district court how the complaint's defects would be cured"); *In re Duke Energy Corp.

Sec. Litig.*, 113 F. App'x 427 (2d Cir. 2004) (summary order) ("[T]he District Court did not

abuse its discretion in denying plaintiffs' request for leave to amend where plaintiffs failed to file

a proper motion to amend or a proposed amendment and where they have already had one

opportunity to amend.").

    Because Plaintiff already had the opportunity to amend, and "has not even bothered to

summarize for the court," *Branum v. Clark*, 927 F.2d 698, 703 (2d Cir. 1991), how he might now

cure the Complaint's pleading deficiencies, I decline to grant leave to amend.

**IV.**    <u>**CONCLUSION**</u>

    For the reasons stated above, Defendants' motions to dismiss are GRANTED.  The Clerk

of Court is respectfully directed to terminate the pending motions, (ECF Nos. 51 and 56), and

close the case.

**SO ORDERED.**

Dated: October 23, 2023
       White Plains, New York

_____
     CATHY SEIBEL, U.S.D.J.